UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

06 CA 11433 RGS MLW

| | |
|---|---|
| FRANCIS J. LYNCH, and<br>ANNE M. LYNCH,<br><br>                      Plaintiffs<br><br>v.<br><br>CENTURION CAPITAL CORPORATION,<br>and WOLPOFF & ABRAMSON, LLP,<br><br>                      Defendants | Civil Action No.<br><br>MAGISTRATE JUDGE _____<br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL**<br><br>AMOUNT $ 350<br>SUMMONS ISSUED 4<br>LOCAL RULE 4.1<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY. CLK.<br>DATE |

## INTRODUCTION

1. Plaintiffs, FRANCIS J. LYNCH and ANNE M. LYNCH, aggrieved consumers (hereinafter "Plaintiffs"), seek damages for the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a-1692k (hereinafter "FDCPA"), the Massachusetts Statute Regulating Debt Collection Activities, M.G.L. c.93, § 49 (hereinafter "Massachusetts Debt Collection Act"), and the Massachusetts Consumer Protection Act, M.G.L. c.93A, §§ 1-9 (hereinafter "Consumer Protection Act"). These statutes prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

## JURISDICTION

2. This Court's jurisdiction arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the claims

1

under the Massachusetts Debt Collection Act and the Consumer Protection Act. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3.     Venue in this District is proper in that the Defendants transact business here, and the conduct complained of occurred here.

## PARTIES

4.     Plaintiffs, FRANCIS J. LYNCH and ANNE M. LYNCH, are individual consumers who reside at 461 East 8th Street, South Boston, Massachusetts.

5.     Defendant, CENTURION CAPITAL CORPORATION (hereinafter "Centurion" or "Defendant"), is a corporation organized under applicable law with its principal place of business located at 700 King Farm Blvd., Suite 505, Rockville, Maryland. To the best of Plaintiffs' knowledge and belief, a significant portion of Centurion's business involves the purchasing of charged-off or defaulted debts from various collectors.

6.     Defendant, WOLPOFF & ABRAMSON, LLP (hereinafter "W&A" or "Defendant"), is a national collection attorney network firm organized under applicable law, with a local office at 489 Whitney Avenue, 2nd Floor, Holyoke, Massachusetts. To the best of Plaintiffs' knowledge and belief, W&A is primarily engaged in the business of collecting debts on behalf of third-party creditors and debt purchasers.

## FACTUAL ALLEGATIONS

7.     Prior to January 29, 1999, Anne Lynch entered into a contract with Chase Manhattan Bank, N.A. ("Chase") granting her access to an unsecured, revolving line of credit in connection with a Chase Platinum MasterCard account (the "Chase Account"). The last four numbers of the Chase Account are 0216. She had also entered into a similar

contract in connection with a Chase Platinum Visa account. Prior to February 2, 1999, Francis Lynch had entered into similar credit lines in connection with Chase CashElite, Shell MasterCard from Chase, Chase Platinum Visa, and Chase Platinum MasterCard accounts. In return, Plaintiffs promised to make monthly payments of principal and accrued interest.

8.   In the years following their credit agreements with Chase, Plaintiffs experienced a growing number of medical problems in connection with their advancing years. Anne Lynch has had quadruple bypass surgery and two bouts of cervical cancer, resulting in additional surgeries. Francis Lynch's medical problems include: macular degeneration, which has resulted in substantial loss of vision; diabetes; and heart disease, which resulted in a debilitating heart attack. These health problems have rendered him unable to care for himself. Plaintiffs' income is derived solely from social security benefits and two small pensions, which barely cover the cost of their living necessities and out-of-pocket medical expenses.

9.   As a consequence of these circumstances, Plaintiffs have encountered significant financial difficulties. They have not been able to pay their debts as they became due for a period of several years.

10.   On April 28, 1999, Plaintiffs retained the services of Hendel & Collins, P.C. ("H&C") to represent them in connection with their worsening financial circumstances.

11.   On or about June 4, 1999, H&C wrote several letters to Chase, the original owner of the Chase Account and other credit card accounts listed above, on behalf of Plaintiffs. A copy of the June 4 letter to Chase regarding the Chase Account is attached

as Exhibit "A." These letters informed Chase that the Plaintiffs had retained H&C to represent them, and, pursuant to the Massachusetts Consumer Protection Act, that Chase should cease all direct contact with Plaintiffs. The letters further instructed Chase to direct all future communications concerning the Chase Account and other accounts to the attention of H&C Attorney Philip J. Hendel, who would handle Plaintiffs' financial affairs from those dates forward.

12. The letters also described Plaintiffs' current medical conditions and their resulting inability to pay their debts in full. Additionally, the letters proposed that Plaintiffs be permitted to continue making monthly payments, though reduced to an amount they could afford, in exchange for Chase's agreement to waive any further interest charges.

13. Subsequent to the June 4 letters, Chase persisted in directly contacting Plaintiffs.

14. In response, H&C sent two additional letters repeating Plaintiffs' demand for a cessation of all contact pursuant to the Massachusetts consumer protection laws. A copy of the second letter concerning the Chase Account is attached as Exhibit "B."

15. Upon information and belief, the Chase Account and various other Chase accounts were sold or assigned to Vision Nevada, Inc. between approximately September, 2001 and December, 2001.

16. Upon information and belief, prior to March 6, 2006, the Chase Account and other Chase accounts were repeatedly purchased and sold by and among various entities engaged in the business of purchasing charged-off or defaulted debt. These entities included Vision Nevada, Inc., Excalibur I, LLC, New Vision Financial LLC,

Appleton Capital, LLC, Sherman Acquisition LP, and Midland Funding LLC (collectively, with each of these entities' collection agents, "Prior Debt Collectors").

17.     The Prior Debt Collectors had been sent a total of 24 letters indicating that all future communications concerning these accounts must be sent to H&C, and, pursuant to the Massachusetts Consumer Protection Act, Plaintiffs were not to be contacted directly. Copies of the letters to the Prior Collection Agencies concerning the Chase Account are attached as Exhibits "C" through "E."

18.     Upon information and belief, Defendant Centurion purchased the Chase Account from Midland Funding LLC between November 30, 2005 and March 6, 2006.

19.     Upon information and belief, between November 30, 2005 and March 6, 2006, Centurion placed the Chase Account for collection with Defendant W&A.

20.     Upon information and belief, when Midland Funding LLC sold the Chase Account to Centurion, and Centurion placed it for collection with W&A, both Centurion and W&A failed to request fundamental account information, including whether Plaintiffs were represented by counsel. Upon information and belief, by failing to request this information, Defendants made no attempt to comply with key provisions of the Massachusetts Consumer Protection Act.

21.     Plaintiffs submit that procedures and safeguards exist in Defendants' industry that have the purpose and effect of ensuring that, when an account is assigned for collection, the debtor's account information is accompanied by important debtor-specific information. This information includes whether a debtor is represented by counsel or has demanded cessation of contact.

22. Plaintiffs further submit that state and federal law and regulations governing the collection of consumer debts require the implementation of and compliance with the procedures described in the preceding paragraph.

23. By implementing such a requirement, lawmakers acknowledged that creditors, debt purchasers and debt collectors secure an unfair competitive advantage when they do not share key facts regarding an alleged debt.

24. In the absence of such requirements, by purposefully failing to inquire as to fundamental debtor information, a debt collector could validly claim that it did not know the debtor was represented by counsel; that it did not know the debtor asked not to be contacted at work; or that it did not know the debtor had requested not to be contacted directly regarding collection of a debt. This purposeful ignorance would permit creditors and debt collectors to circumvent consumer protection laws. This conduct manifestly secures a meaningful, unfair advantage as against those creditors and collectors that do share key debtor information.

25. A debt owner's failure to share key debtor information with its debt collector and other agents undermines consumer debtor protections provided by federal and state law. If lawful, the failure to share critical debtor information would permit a debt collector to violate established consumer protections with impunity. The debt collector could cloak itself in a mantle of ignorance. This circumvention of laws designed to protect consumer debtors constitutes an unfair trade practice.

26. On or about March 6, 2006, W&A sent a letter directly to Plaintiffs at their home address in an attempt to collect on the Chase Account. A copy of this letter is attached as Exhibit "F."

27. On or about April 10, 2006, W&A sent yet another collection letter directly to Plaintiffs at their home address in an attempt to collect the alleged debt. A copy of this letter is attached as Exhibit "G."

28. On May 4, 2006, H&C mailed a letter (the "May 4th Demand Letter") to W&A advising it that H&C represents Plaintiffs and that W&A should cease all direct contact with Plaintiffs pursuant to Chapter 93A, the Massachusetts Consumer Protection Act, and the FDCPA. A copy of the May 4th Demand Letter is attached as Exhibit "H."

29. The May 4th Demand Letter stated that it was astonishing that W&A was unaware of H&C's representation of Plaintiffs, especially in light of the 25 letters sent by H&C to the Prior Collection Agencies. Copies of these letters were enclosed with the May 4th Demand Letter. Copies of these 25 letters are attached as Exhibit "I." Each of these letters advised the creditor or its collection agent that Plaintiffs were represented by H&C, and that any further direct contact with Plaintiffs was prohibited by state and federal law.

30. The May 4th Demand Letter further stated: "[W]e assume that Wolpoff and Abramson would not have written to our client directly if they had been informed of our representation. Your law firm knows better than that. However, we would like for you to tell us in writing that you had no knowledge of our representation, and inform us of the name and address of the individual or firm that sent you the claim as we do intend to take further action at this time."

31. The May 4th Demand Letter informed W&A of Plaintiffs' contention that, considering the volume of communication between H&C and the various collectors of the Chase Account, even subsequent owners and collectors commit actionable unfair and

deceptive acts by ignoring cease-contact communications from Plaintiffs, and/or by failing to make adequate inquiry regarding this fundamental issue.

32. Upon information and belief, the conduct of W&A was willful and knowing with regard to all matters alleged in this Complaint.

33. W&A did not respond to H&C's May 4th request for further information regarding the Chase Account. Additionally, W&A did not propose a reasonable offer of settlement within 30 days after receipt of the May 4th Demand Letter, as set forth in M.G.L. c.93A, § 9(3).

34. Rather than complying with H&C's demand for cessation of direct contact and for further information, W&A intensified its aggressive tactics against Plaintiffs. By way of example, during the week beginning on Monday, May 15, 2006, W&A repeatedly called Plaintiffs directly, often 2 – 3 times per day. Recorded messages were left for both Plaintiffs as well as an unknown person, Thomas J. Lynch. Plaintiffs' daughter, Sheila Lynch, described this harassment in an e-mail dated May 19, 2002. A copy of this e-mail is attached as Exhibit "J."

35. In response to the continued harassment, on May 22, 2006, H&C sent by facsimile and first-class mail yet another letter ("the May 22 Letter") to W&A. A copy of this letter is attached as Exhibit "K."

36. The May 22 Letter stated that over 25 copies of letters concerning the various Chase accounts had been sent to W&A and that it was inconceivable that W&A did not know of H&C's representation of Plaintiffs.

37. Enclosed with the faxed May 22 Letter was an e-mail received the week before indicating Plaintiffs' frustration at W&A's unlawful, overly aggressive tactics. A copy of this e-mail is attached as Exhibit "J." The e-mail described how Plaintiffs' hearing aids could not pick up the tone of the messages being played, and they would repeatedly say "hello" only to hang up in frustration because they could not hear anyone on the other end.

38. Despite the May 22 Letter, which was delivered to W&A via facsimile at 12:10 p.m., on May 22, 2006, at or about 3:40 p.m., W&A placed yet another telephone call to Plaintiffs at their home. The call was purportedly directed to an unknown person, Thomas J. Lynch.

39. In an e-mail sent by Sheila Lynch to H&C on May 22, 2006 at 4:05 p.m. ("the First May 22 E-mail"), Sheila Lynch wrote that she had spoken with a man named Mr. Hall. A copy of this e-mail is attached as Exhibit "L."

40. In the First May 22 E-Mail, Sheila Lynch explained to Mr. Hall that Thomas Lynch did not live there and that W&A had been instructed not to call Plaintiffs. Mr. Hall refused to accept responsibility for placing the call to Plaintiffs, and instead blamed it on an automated computer system.

41. Also on May 22, 2006, at or about 8:58 p.m., W&A called Plaintiffs at home a second time. In a second e-mail, sent at 9:04 p.m. on May 22, 2006 ("the Second May 22 E-mail"), Sheila Lynch described how Francis Lynch answered the call but could not hear the message. A copy of this e-mail is attached as Exhibit "M."

42. On May 24, 2006, H&C once again faxed and mailed a third letter ("the May 24 Letter") to W&A regarding the persistent and unlawful direct contact with Plaintiffs. A copy of this letter is attached as Exhibit "N."

43. The May 24 Letter stated that W&A was continuing to directly contact Plaintiffs despite repeated requests to cease. Moreover, W&A's overly aggressive collection efforts were impacting Plaintiffs' health.

44. The May 24 Letter once again demanded that all future contact of any kind be directed to H&C, not Plaintiffs.

45. Plaintiffs submit that Defendants' violations were intentional.

46. In addition, Plaintiffs assert that such violations would not have occurred had Defendants put into place and utilized adequate procedures to ensure compliance with the FDCPA, the Massachusetts Debt Collection Act, and the Consumer Protection Act.

### COUNT I – UNFAIR AND DECEPTIVE ACTS AND PRACTICES
[Violation of the Fair Debt Collection Practices Act - 15 U.S.C. § 1692 – 1692o]
(Plaintiffs v. Centurion Capital Corporation and Wolpoff & Abramson LLP)

47. Plaintiffs repeat, re-allege and incorporate by reference Paragraphs 1 through 46 above with the same force and effect as if fully set forth herein.

48. At all relevant times, Centurion Capital Corporation and Wolpoff & Abramson LLP (hereinafter referred to in this Count I as "Defendants") have been engaged in the conduct of trade or commerce in Massachusetts.

49. Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

10

(a) Defendants violated 15 U.S.C. § 1692c(a)(2) by contacting Plaintiffs after they knew or should have known that Plaintiffs were represented by counsel, and

(b) Defendants violated 15 U.S.C. § 1692d(5) by causing Plaintiffs' telephone to ring or engaging in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Plaintiffs and their daughter, Sheila Lynch. Specifically, during the week beginning on Monday, May 15, 2006, Defendants called Plaintiffs directly. Every day of the week, Defendants made 2 – 3 calls per day. Recorded messages were left for both Plaintiffs as well as an unknown person, Thomas J. Lynch. On May 22, 2006, Defendants phoned Plaintiffs' home two more times. One of these calls was for Thomas Lynch, yet Defendants had previously been told that no one by that name lived at the address. By calling Plaintiffs repeatedly, despite frequent requests to stop, Defendants' actions constitute harassment, annoyance and abuse of Plaintiffs.

50. The Defendants' actions as described herein were willful and knowing.

51. As a result of the above-described violations of the FDCPA, Defendants are liable to Plaintiffs in the sum of Plaintiffs' actual and statutory damages, and attorneys' fees and costs.

## COUNT II – UNFAIR AND DECEPTIVE ACTS AND PRACTICES
### [M.G.L. c.93, § 49]
### (Plaintiffs v. Centurion Capital Corporation and Wolpoff & Abramson LLP)

52. Plaintiffs repeat, re-allege and incorporate by reference Paragraphs 1 through 51 above with the same force and effect as if fully set forth herein.

53. At all relevant times, Centurion Capital Corporation and Wolpoff & Abramson LLP (hereinafter referred to in this Count II as "Defendants") have been engaged in the conduct of trade or commerce in Massachusetts.

54. Defendants violated the Massachusetts Debt Collection Act. Defendants' violations include, but are not limited to, the following:

(a) Defendants violated M.G.L. c.93, § 49(b), by contacting Plaintiffs after they knew or should have known that Plaintiffs were represented by counsel, and

(b) Defendants violated M.G.L. c.93, § 49(c), by communicating with Plaintiffs in such a manner as to harass or embarrass them, including, but not limited to communication with unreasonable frequency and at an unreasonable hour. Specifically, during the week beginning on Monday, May 15, 2006, Defendants called Plaintiffs directly. The frequency of these calls was unreasonable both because of their number as well as the fact that H&C had previously told Defendants multiple times that direct contact was prohibited.

Despite this notice, every day of the week, Defendants made 2 – 3 calls per day. Recorded messages were left for both Plaintiffs as well as an unknown person, Thomas J. Lynch. On May 22, 2006, Defendants phoned Plaintiffs' home two more times. One of these calls was for Thomas Lynch, yet Defendants had previously been told that no one by that name lived at the address.

In at least one instance, the calling time was also unreasonable. The second phone call on May 22, 2006, was made to a man over 80 years old at approximately 9 o'clock at night. By calling Plaintiffs repeatedly and at unreasonable times, despite frequent requests to cease, Defendants' actions constitute harassment.

55. The Defendants' actions as described herein were willful and knowing.

56. As a result of the above-described violations of the Massachusetts Debt Collection Act, Defendants are liable to Plaintiffs in the sum of Plaintiffs' actual and statutory damages, and attorneys' fees and costs.

### COUNT III – UNFAIR AND DECEPTIVE ACTS AND PRACTICES
[M.G.L. c.93A, § 2]
(Plaintiffs v. Centurion Capital Corporation and Wolpoff & Abramson LLP)

57. Plaintiffs repeat, re-allege and incorporate by reference Paragraphs 1 through 56 above with the same force and effect as if fully set forth herein.

58. At all relevant times, Centurion Capital Corporation and Wolpoff & Abramson LLP (hereinafter referred to in this Count III as "Defendants") have been engaged in the conduct of trade or commerce in Massachusetts.

59. Defendants' violations of the FDCPA as alleged in Count I and their violations of M.G.L. c.93, § 49 as alleged in Count II each constitute independent violations of M.G.L. c.93A, § 2.

60. Defendants violated the Massachusetts Consumer Protection Act. Defendants' violations constitute unfair or deceptive acts or practices, and include, but are not limited to, the following:

(a) Defendants violated M.G.L. c.93A, § 2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.04(1)(f), by engaging Plaintiffs in communication via telephone, initiated by Defendant, in excess of two calls in each seven-day period at Plaintiffs' residence. Specifically, during the week beginning on Monday, May 15, 2006, Defendants called Plaintiffs directly. Despite repeated notice that H&C represented Plaintiffs and that direct calls were unlawful, Defendants called every day of the week, 2 – 3 calls per day;

(b) Defendants violated M.G.L. c.93A, §2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.04(1)(g), by placing telephone calls at times known to be times other than Plaintiffs' normal waking hours. On May 22, Defendants called Plaintiffs at approximately 9 o'clock at night. This call was made despite the fact that Defendants knew or should have known, based upon prior enclosures in correspondence from H&C to Defendants, that Plaintiffs were ill and over 80 years old, and thus would likely be in bed by that time. In any case, this call was commenced at or about 8:58 p.m., and therefore likely extended beyond the 9:00 p.m. deadline set forth in the Attorney General's regulations;

(c) Defendants violated M.G.L. c.93A, § 2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.04(2), by repeatedly contacting Plaintiffs after notification from H&C that all contacts relative to Plaintiffs should be addressed to H&C; and,

(d) Defendants violated M.G.L. c.93A, § 2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.05(3)(d), by engaging Plaintiffs' daughter, Sheila Lynch, in communications via telephone, initiated by Defendants, in excess of two calls in each seven-day period at Plaintiffs' residence. Specifically, during the week beginning on Monday, May 15, 2006, Defendants called Plaintiffs every day of the week, 2 – 3 calls per day. Sheila Lynch was at home during this week of harassment and answered phone calls placed by Defendant.

61.     Defendants harassed Plaintiffs in their efforts to collect a debt. As a result, Plaintiff Anne Lynch suffered severe physical and emotional harm. Anne Lynch's blood pressure rose dramatically following the multiple, daily calls from Defendants

14

during the week beginning on Monday, May 15, 2006. Furthermore, Anne Lynch normally sleeps during the day as a result of her medication, but she has been wakened by Defendants' repeated disturbances and thus has been unable to rest in accordance with her doctor's instructions.

62.　Additionally, Anne Lynch has been physically shaken as a result of the constant calls. Since the harassing calls began, she has experienced shaking limb symptoms similar to those suffered by people with Parkinson's disease. Anne Lynch now fears that Defendants' calls will never stop despite her reliance on H&C.

63.　The Defendants' actions as described herein were willful and knowing.

64.　As a result of the above-described violations of the Massachusetts Consumer Protection Act, Defendants are liable to Plaintiffs in the sum of Plaintiffs' actual and multiple damages in addition to reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

(1) Declaratory judgment that Centurion and W&A's conduct violated the FDCPA;

(2) Declaratory judgment that Centurion and W&A's conduct violated the Massachusetts Debt Collection Act;

(3) Declaratory judgment that Centurion and W&A's conduct violated the Massachusetts Consumer Protection Act;

AND, Plaintiffs respectfully request the following relief be entered against Defendants as follows:

(4) Actual damages arising from or related to Defendants' violations of the FDCPA, the Massachusetts Debt Collection Act, and the Massachusetts Consumer Protection Act;

(5) Statutory damages pursuant to 15 U.S.C. § 1692k and M.G.L. c.93A, § 9;

15

(6) Multiple damages pursuant to M.G.L. c.93A, § 9;

(7) Exemplary damages on account of Defendants' willful violations of the FDCPA and the Massachusetts Consumer Protection Act;

(8) Costs and reasonable attorneys' fees; and

(9) Such other and further relief as may be just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

FRANCIS J. LYNCH and
ANNE M. LYNCH
By their attorneys

Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:   (617) 261-0100
Fax:   (617) 261-0789
email: sgordon@gordonhaley.com
       tgordon@gordonhaley.com

and

Steve Munson by GH
Philip J. Hendel, Esq. (BBO No. 230080)
Steven A. Munson, Esq. (BBO No. 657892)
Hendel & Collins, P.C.
101 State Street
Springfield, MA  01103
Tel. (413) 734-6411
Fax: (413) 734-8069
email: phendel@hendelcollins.com
       smunson@hendelcollins.com

Dated: August 14, 2006

P:\Clients\Lynch, F&A\Plead\Complaint.doc